GEORGE E. SHEPARD *vs.* LEWISTON, BRUNSWICK AND BATH
STREET RAILWAY.

Androscoggin.  Opinion September 21, 1906.

*Negligence.  Contributory Negligence.  Jurors.  "Free Railroad Tickets."*
*Statute, R. S., c. 84, § 104, Permissive Only.  R. S., c. 84, § 104.*

In the case at bar, which was an action to recover damages for personal
injuries, the verdict was for the defendant. *Held:* that the jury was
authorized by the evidence to find that the plaintiff was guilty of contrib-
utory negligence and that the verdict cannot be set aside because the jury
so found.

After the trial it appeared that at the time of the trial, the foreman of the
jury, was in possession of a "blue book" of free tickets for carriage on the
defendant's railroad.  The plaintiff claimed that this fact was not known
to him at the time of the trial but that it was known to the defendant's
treasurer who was present during the trial. *Held:* that the mere fact of
the possession of the "blue book" by a juror under the circumstances as
shown by the evidence and stated in the opinion, is not fatal to the ver-
dict without proof aliunde that the plaintiff was prejudiced thereby, and
that there is no such evidence in this case.

Revised Statutes, chapter 84, section 104, provides as follows: "If either
party, in a cause in which a verdict is returned, during the same term of
court, before or after the trial, gives to any of the jurors who try the
cause, any treat or gratuity, or purposely introduce among the papers
delivered to the jury when they retire with the cause, any papers which
have any connection with it, but were not offered in evidence, the court,
on motion of the adverse party, may set aside the verdict and order a new
trial." *Held:* that this statute is mainly in affirmance of the common law
powers of the court and is permissive only.  It is expressive of the strong
purpose of the law making body that litigants shall have jurors free from
all improper influences.  But were it mandatory, it is difficult to see how
it could apply to this case.  It has reference to the misconduct of parties
during the term of court, and not to acts, innocent in themselves, which
occurred months before the term.

On motions by plaintiff.  Overruled.

Action on the case to recover damages for personal injuries sus-
tained by the plaintiff and caused by the alleged negligence of the
defendant.  Plea, the general issue.  Tried at the January term,

1906, of the Supreme Judicial Court, Androscoggin County.   Verdict for defendant.   The plaintiff then filed a general motion for a new trial, and also a special motion for a new trial, alleging· in this last named motion in support thereof as follows :

"First :  C. I. Barker the foreman of the jury which sat upon said case and rendered said verdict while sitting upon said case and deliberating thereon possessed and had a "blue book " so called in which were free tickets for passages on the defendant's electric railroad which book had been given to said foreman by said defendant corporation which fact was without fault or collusion on the part of the. plaintiff and the information of the foreman's possession of said blue book has come to the knowledge of the plaintiff and his counsel since the close of. the trial and that neither the plaintiff nor his counsel had any suspicion or knowledge of said fact prior to or during the progress of the trial.

"Second:  The treasurer of said defendant corporation by whom said blue book was issued was present when the jurors in said case were about to enter upon the discharge of their duties and the presiding Justice stated that any stockholder in the defendant corporation would be disqualified to sit, thereby emphasing the court's desire to have an absolutely impartial jury and yet said treasurer did not disclose to the court that the juror Barker possessed said book."

After the filing of the special motion, testimony relating to the matters alleged in the motion was received by the court both from the plaintiff and the defendant.

The case appears in the opinion.

*Tascus Atwood,* for plaintiff.

*Newell & Skelton,* for defendant.

SITTING : WISWELL, C. J., WHITEHOUSE, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

SAVAGE, J.   Case for damages sustained on account of the alleged negligence of the defendant.   The plaintiff, on the day in question, was engaged in moving a threshing machine loaded on wheels from a dooryard into the road.   In so doing he crossed the defendant's track by the road side.   He was on foot, driving the team, and was

by the side of the horses or load.   On the other side of the load, at the same time, one of the defendant's electric cars was approaching. And it came into collision with the rear end of the plaintiff's load at the point of crossing, breaking down the rear wheels and causing the load to fall upon the plaintiff, so that he received the injuries complained of.   The verdict was for the defendant, and the only question presented by the general motion is whether the verdict is . shown to be so clearly wrong as to require the interference of the court.

The questions whether the defendant was negligent and whether the plaintiff was guilty of contributory negligence were both sharply contested.   We do not, however, find it necessary to consider the first question, because we think the jury were authorized by the evidence to determine the issue of contributory negligence adversely to the plaintiff, and that is fatal to his motion.

The plaintiff claims that at a point in the dooryard about ninety feet from the railroad, the defendant's track in the direction from which the car was approaching, or at least a car upon the track, could be seen for about fourteen hundred feet.   And he testified that at that point, while driving out of the yard, he looked at the track in that direction, as far as he could see, and that no car was in sight. He also testified that he did not look afterwards, and that he did not hear the sound of the approaching car, and was not aware of its whereabouts until the instant of collision.   His contention is that having looked where he says he did, and no car being in sight or nearer than fourteen hundred feet, it was not negligence for him to proceed across the track, ninety or one hundred feet, at the rate of about two miles an hour, without looking again.

It does not seem to be disputed that from a point about thirty-four feet from the track and until the track was reached, an approaching car might all the time have been seen by the plaintiff for a distance of about fourteen hundred feet along the track, and that he could have seen this car in ample season to have stopped in safety, if he had then looked.   But he did not look.   The defendant claims that the point of view where the plaintiff says he looked was so obstructed by a hedge and trees, that he could not have seen the track

as he says he did, or a car, if one had been there. And from this the defendant argues that the jury were warranted in finding that the plaintiff did not look at all, at any place where he could see, and hence that he was clearly guilty of negligence. *Butler* v. *Railway*, 99 Maine, 149. Upon the question as to what the plaintiff could see, and how far, from the point where he says he looked, much evidence, pro and con, was elicited. And, besides, the jury were permitted to take a view. What they saw we have no means of knowing. From the evidence in the case we think that the jury were authorized to find, as claimed by the defendant, that the plaintiff could not see as he says he did, and so was negligent in not looking later when he could see in season to protect himself. Or, if as claimed by the plaintiff, he could see, they were authorized to conclude that if he had looked he must have seen the approaching car, and that he either did not look, or looked and saw the car approaching, and yet went on to the crossing without looking again, in either of which contingencies the jury might well find him negligent. The jury heard much and conflicting evidence as to the speed at which the car was running, and if from that evidence they concluded that the car was within fourteen hundred feet of the crossing when the plaintiff says he looked, and clearly within his vision, if he could see as he says he could, we find nothing in the case which requires their conclusion to be overruled. And if the jury found that he looked and saw the car approaching, or that he could not look or did not look, their verdict for the defendant cannot be set aside under the general motion.

The plaintiff has also filed a motion for a new trial on the ground that at the time of the trial, Mr. Barker, the foreman of the jury, was in possession of a "blue book" of free tickets for carriage on the defendant's railroad, alleging that this fact was unknown to the plaintiff at the trial, but was known to the defendant's treasurer, who was present during the trial.

The facts appear to be these: Mr. Barker was one of the trustees of the Maine State Agricultural Society in Lewiston, to the grounds of which one of the defendant's branches is extended. The defendant's directors voted to issue "blue books" to the secretary, treasurer

and trustees of the society. On September 11, 1905, a clerk in the office of the defendant's treasurer, issued the books. They were sent to the president of the society, who gave one to Mr. Barker. Mr. Barker testified that he used the book during the fair in September, 1905, and that after the fair he left it in the vest he wore at the fair, where it remained until after the trial of this case, and that at the trial he did not remember that he had the book. Up to that time he had used it nine times. After the trial at the January term, 1906, but during the term, he used the book twice. The defendant's treasurer testified in substance that he did not know Mr. Barker before the trial, and, as we think his testimony fairly implies, that he did not then know that Mr. Barker, the juror, and Mr. Barker, the trustee, were one and the same person. Mr. Barker was not drawn as a juror until several months after he received the book. And it is expressly disclaimed by the counsel for the plaintiff that the book was issued or received with any corrupt motive whatever.

It will thus be seen that questions of the misconduct of parties and the misconduct of jurors are not involved here. The question here is simply whether the mere fact of the possession of the "blue book" by a juror under the circumstances stated, is fatal to the verdict, without proof aliunde that the plaintiff was prejudiced thereby; for there is no such proof. The plaintiff contends that the juror *might* have been biased by the possession of the book, that he *might* have been influenced by "a grateful and kindly feeling" towards the defendant, on account of the book, even if he had forgotten that he had it, and that where it appears that the purity of a verdict *might* be affected by such an influence, the presumption is against its purity, and unless it is proven that the influence failed of its effect, that the verdict should be set aside.

It need not be said that courts are jealous of the purity of jury trials, and that they will use their full power to prevent partial and prejudiced verdicts, and to set them aside, if once obtained. It is necessary that litigating parties should be able to try their rights before jurors impartial, unbiased and unprejudiced by passion or affection. It is equally necessary, in the administration of justice

that the parties and the public should have reason to feel that the trial has been impartial, and that the verdict has not been clouded by the suspicion of prejudice. *Bradbury* v. *Cony*, 62 Maine, 225. The error in judgment of a merely human tribunal will be forgiven and forgotten, but not any taint of unfairness. Whenever it appears that a party has attempted to bias jurors by bringing improper influence to bear upon them, the court will not stop to inquire whether the attempt was successful, but will presume that a verdict in his favor was the product of vicious influence, and set it aside. So, in many cases the same result has followed when parties have, without corrupt motive or wrong intent permitted influences to bear upon jurors which might bias their judgments, at least when it has not been shown affirmatively that no harm resulted. But we are not aware of any case which goes so far as we are asked to go by the plaintiff here.

The plaintiff also calls our attention to R. S., ch. 84, sect. 104, which provides that "if either party in a cause in which a verdict is returned during the same term of the court, before or after the trial, gives to any of the jurors who try the cause any treat or gratuity . . . . the court, on motion of the adverse party, may set aside the verdict and order a new trial." He contends that the continued possession and use of the book after the trial should have the effect of making the original gift a continuing one, substantially a gift during the term. This statute is mainly in affirmance of the common law powers of the court, and is permissive only. It is expressive of the strong purpose of the law making body that litigants shall have jurors free from all improper influences. But were it mandatory, it is difficult to see how it could apply to this case. It has reference to the misconduct of parties during the term of court, and not to acts; innocent in themselves, which occurred months before the term.

We do not think the plaintiff has shown sufficient cause for setting the verdict aside. We cannot persuade ourselves that the gift of a "blue book" of free tickets on an electric railroad, of trivial value, as a favor, not particularly to the recipient, but rather to the society of which he was a trustee, months before the donee was or could have been expected to be drawn as a juror, should of itself be regarded

as evidence of bias or prejudice on the part of the juror, or as raising a presumption that his verdict was affected by improper influences, or that it might have been otherwise tainted. It is true, in human experience, that almost all things are possible, but the possibility of bias under such circumstances as these seems so remote as not to be worthy of consideration. Nothing further being shown, the verdict must stand.

*Both motions for a new trial overruled.*